Good morning, Your Honors. Vince Bronco, Federal Defenders, on behalf of Mr. Hernandez. I apologize in advance for my voice. I'm getting over a case of the bronchitis and also, for some reason, I can't say the word cooperate. Mr. Hernandez's conviction for the financial gain count must be reversed because the government failed to sufficiently corroborate that the offense was committed for financial gain. They also committed prosecutorial misconduct by arguing that we know it's a business. As to the sufficiency of the evidence, the government cannot rely on an uncorroborated confession. This court uses a two-part test. First, the government must introduce sufficient evidence to determine that the conduct at the core of the offense occurred. Second, they must also introduce independent evidence tending to establish the trustworthiness of the confession. Here, the core of the offense is financial gain. That is what separates this offense, the three-year minimum mandatory, from just failing to present, and that is a financial gain. And here, there was no evidence of any type of payment. The material witness didn't testify, so there was nothing from him saying, I expect it to pay. Also, the person that posted bail for this individual didn't say anything like he was going to pay for his entry or how the person planned to come to the United States. How do these cases that talk about lack of any other rational explanation, can you use that kind of common sense sort of bootstrapping to suffice as corroboration? Not in this case. All the cases that say there is a lack of any other explanation, there is always evidence to foreclose those explanations. And I assume the Court's talking about cases such as Anguin, Schimenauer, Yoshida. Yes. All those, for example, in Schimenauer, the material witnesses, first of all, testified that they expected to pay $3,000. But as to the explanation, the material witness also testified, I've never seen that person before. So there was evidence that foreclosed these other explanations. Here you don't have that. There's absolutely no evidence regarding the relationship between Mr. Hernandez and Mr. Jimenez that was in the car. There's nothing that they weren't friends, they weren't relevant, they weren't relatives. So there's nothing to foreclose the possibility that this was purely for a benevolent reason. So what about the fact that the confession was videotaped? Does that make it more trustworthy? Well, remember, this is a two-prong test. That might go to the trustworthiness prong, but it doesn't go to whether or not they've proved the core of the offense, and that is financial gain. So no matter how trustworthy the confession would be, unless they can establish independently substantial evidence that this was for financial gain, they still lose. They have to get both, not one. But I submit that even if you just look, the trustworthiness of the confession itself, just because it's videotaped does not make it trustworthy. I think quite the opposite, meaning on the videotape you can see how Mr. Hernandez initially denied all involvement of the offense and gave an explanation. The videotape shows how the agents, over pages of the transcripts, go in and tell him, no, we don't believe you, you're lying, we won't accept that. Based on our experience, this just doesn't happen. And they even say, you know, we are we may charge you with perjury if you keep telling us this, because one of his statements was inconsistent with the other. So the trustworthiness of this particular statement, even if videotaped, is lacking because of the coercive tactics of the agents. I mean, this is the exact type of situation where this corpus delicti rule was meant to be, where there is coercive tactics and the government has no other evidence of this financial gain element. And the test truly is, it has to be substantial evidence. And that is in OPER at 348 U.S. 93, and they also are citing Smith v. U.S., a case to cite on the same day, and that's at 348 U.S. 156. And those two cases make clear that the evidence that they, this independent evidence, they quote, has to be substantial independent evidence. So, and even the Smith case talks about it as, well, they don't have to prove it beyond a reasonable doubt. They don't have to prove it by preponderance, but it has to be substantial. So in this case, there's simply nothing. They didn't foreclose the innocent possibilities. They did not put evidence of some type of payment. And some of the other cases have relied on, well, you know, either the person involved had been smuggled for money in the past or the person that was actually driving. That's not even in this case. So any of the cases that have found sufficiency of the evidence in this case are easily distinguishable, and the plain facts that were there in those aren't here. Even if this Court, excuse me, concludes that there was indeed sufficient evidence, still the government committed misconduct during summation. During summation, the government's argument on this fourth element of financial gain, and it's at 139 over the excerpt of record, they say, fourth, the defendant brought the alien Alfredo Jimenez-Najar to the United States for the purpose of financial gain, private financial gain. And we know that because, first of all, it's a compartment. So we know it's a business. We know it's a business, the business of concealing aliens, bringing them through the court. That is nearly the entire argument that the prosecutor made on financial gain. And she, in this case, brought her personal opinion, the we know, into the case. And that was there was a lack of reason, and the only argument she makes on it. Why isn't that just a reasonable inference from the evidence? Because this Court has drawn a clear line. When a prosecutor is going to argue a reasonable inference, they have to give the jury some clue that they're doing it. The classic example that this Court has talked about is the I submit versus the I think argument. If you say, I submit it's a compartment, so that shows it's a business, that's permissible. If you just go, it's a compartment, we know, the government of the United States, the case agent, I, we all know that it's a business. That's putting your personal opinion into it. Just like if she would have said, it's a compartment, I think it's a business. It's the same thing. I think the we is even more egregious in this case because the jury can interpret that as the prosecutor, the case agent or the entire government. Basically that they, that the we, have this individualized knowledge that it's a business, and not just looking, not just telling the jury to draw an inference from the compartment. So could they have brought, would it have been permissible or legitimate to bring in an expert to say that I've, you know, I've done, seen so many of these cases where the cars come over and they've got a compartment and it's, and based on my experience in this bill, it's, we know when there's a compartment, it's to smuggle something, whether it be a human or drugs or whatever. It may have made our closing argument more proper, but I think I'd be here arguing a different issue that they shouldn't have done that. But the problem is, is the phrasing of this argument. And it may have been permissible to say, and actually the prosecutor does a good job of it in their response brief, articulating the argument without using the we know. The problem is they didn't make that argument below. They said the we know. And that shows a personal opinion. Unless there's other questions, I'd like to save some time for rebuttal. Good morning. My name is Sherry Hobson. I'm an assistant U.S. attorney in San Diego. I'm the trial attorney in this case. Before I began, I wanted to give the court copies of the colored copies of the exhibits that are contained in the government's excerpts of records. The photographs are in black and white, and I don't know if the court could see exactly what the compartment in this case looked like. So if I may please, can I approach you? You can give those to the clerk. Thank you. Are you going to be referring to those in your argument? I may, if the court has any questions. I want to address the first color copy to your They have it. I wanted to address the first issue. In his opening brief, which consists of four pages of his lengthy brief, he argues that the facts were insufficient, and cites Lopez-Alvarez. The plain facts in this case, as the appellant indicates, has to be viewed in most favorable to the prosecution, whether or not it's reasonable to conclude that the evidence was sufficient. This is not the Irving standard. The Irving standard that was cited in eight pages of his reply brief talks about, it's actually the only case that he relies on, deals with a different standard. The Second Circuit has a different standard of review as opposed to Lopez-Alvarez. Plus, the facts in that case were very different. And the facts in that case dealt with a crime that occurred four years earlier, and the prosecution relied on the journal of the defendant to prove the existence of the crime. This is not what we have here. I would also point out that Lopez-Alvarez, written by Judge Reinhart, was concerned with the fact that you have to have some corroboration because there is some concern with false confessions and nonexistent crimes. We don't have that here in this case. In this particular case, there was sufficient evidence to establish the criminal conduct and that the confession, which was videotaped and which was short, this wasn't a long – it was 55 minutes, but half of it was covering background information. The defendant's statements, his initial story was only about six pages, and then I think his confession was about six additional pages. So we're talking about a very short interview that was videotaped. Ginsburg. So what was the corroboration of the financial gain, the independent corroboration of the financial gain element? In this case, the government charged aiding and abetting. We had two different theories under the financial gain count. The defendant could personally benefit from the crime, and others benefited from the crime. In this case, there's circumstantial evidence in this case. First of all, I argued from the evidence that there was others involved. In other words, this was a commercial venture because other people were involved in this offense. And the defendant confessed that there were other people involved in the offense. We have to set aside the confession. What was the evidence that there were others involved? Well, the vehicle was not registered to the defendant. It was a manufactured compartment. The defendant in this case, there had to be at least two people to remove the access panel and to remove the rear seat. So the evidence at trial was that there were a number of people involved in this commercial venture. The second thing is the existence of the compartment itself. It's commercial in nature. This compartment is designed to conceal people and use for the purpose of bringing in aliens. There were two people in that compartment. So the existence of the compartment has a commercial element. The defendant is not the registered owner of the vehicle. Someone else is the owner of the vehicle. The defendant had possession of the vehicle at that moment. You lost me somewhere. I just want to go back a couple sentences. I'm having trouble understanding the argument that the mere existence of the container or the compartment would be independent corroboration of business nature. Because when you're talking about a compartment, you're not talking about placing the defendant in the trunk of the vehicle or in the backseat of the vehicle or behind the backseat of the vehicle. You're talking about a specially built compartment in the undercarriage of a vehicle. And that vehicle is not registered to the person who's driving it. And on top of that, the compartment is so – is designed to transport aliens. It's not – But how does it make it – I mean, why is that necessarily evidence of it being a business or a commercial venture? Because – Well, suppose it's a family that wants to bring its family – extensive family members across the border. Well, the problem is – And there's no gate, financial gate involved. Well, the compartment – the defendant is not the registered owner of the vehicle. So in other words, you don't have a situation where the defendant is driving his own personal vehicle and he's doing this because he wants to bring family members over. I mean, I don't see how just those facts lead to the only conclusion that this is a commercial venture. Well, you have – when you look at the evidence, the evidence has to be sufficient. It has to be viewed in most favorable light to the government. When you look at some of the cases that were cited by the defendant and the government, those cases are examples of a way you could prove financial gain, but they're not exhaustive. So when you have a situation where you don't have a material witness, you have to demonstrate in other ways, other corroborating evidence, sufficient evidence. Here, you have evidence in the record, notwithstanding his confession, that there were a number of people involved. You have the fact that you have a compartment that's going to be used over and over and over again. And the compartment is in a vehicle that's not registered to the defendant. The other thing is you have a different individual. There's no indication in the record that he was his friend or a family member. In fact, the person who testified said that the material witness, Alfredo Jimenez's family is from Guadalajara, and he testified he knows her family in Guadalajara. And he was surprised to see that he was in the United States. The other thing is that the defendant in this case was unemployed. There was evidence in the record to show that he was not gainfully employed. His employer came down and testified about the fact that the defendant spoke English perfectly, and the defendant at one point worked for him. The other factor, of course, is that in looking at the evidence as a whole in combination, this is not a situation like Irving. Irving is the only case cited by the defense to support his position. Again, in that case, we're talking 4 years earlier, and the only evidence was a journal. Here in this case, we have the defendant driving a vehicle that contains a secret compartment, and that compartment was designed to conceal aliens. There were two people in that compartment. Are you saying that the compartment is so extensive, so expensive, so difficult to prepare that no one would do it for a single trip? Is that your point? Exactly. If you look at the compartment in the colored photographs, you can see that it's professionally manufactured. It's professionally manufactured. It's not a one-time use only. It's designed to place two people and have an access panel over that person's face, cover it with a rug, cover it with a rear seat, both of them which required assistance of other people, and then bolted, bolted into the ground. Well, I mean, it's a fancy compartment, and the question then is, is it fair corroboration to have the inference that simply because it's expensive and sophisticated that one must, therefore, be using it for commercial purposes? No. We're not saying it must be used for commercial purposes. We're saying that all the evidence at trial in this case demonstrated that it was used for commercial purposes. If the defendant is a registered owner of the vehicle, it's one thing. But that's what I'm getting to, because it seems to me that what it all circles back to, although you've emphasized the compartment, is simply that it's not his car. Well, that would be a factor to evaluate. What is the defendant's connection to this car where there's a specially built compartment in the undercarriage of the vehicle? What is the defendant's connection to this car? And the vehicle was registered two weeks earlier to another person. No. In these cases, I can see that probably a lot of these cases are happening where you don't have the material witnesses available. And it sure would be helpful to have one of the witnesses or one of the aliens testify to something. What happened to the aliens in this case? In this particular case, the woman was released. She had some medical issues, so she was released at the scene. So the indictment only charged the male, Alfredo Jimenez, as the material witness. What happened, according to Steve Peek, who testified at the trial, who was a surety, was that at one point, probably a couple months while he was in the United States, he decided to return to Mexico. So this is a situation where we don't have a material witness. We have a situation where the compartment is critical to the issue of establishing alienage and also critical to the establishing defendant's knowledge, but also critical to the establishing the business nature of it. I mean... Are there times when the government would say we can't prosecute this one because all we have is the compartment? If this was a backseat, if the alien was in the backseat or if the alien was in the trunk of the vehicle, I think it would be difficult to establish for gain. But in this particular case, we had the concealment. Why is that? If it was a backseat, it would be difficult to establish for gain. Because the person's in the backseat. There is no effort by other people to build a commercial professional compartment in the undercarriage of a vehicle, which costs money. You know, it would be helpful to me if there had been some testimony, you know, expert testimony or something to that effect in the record. Well... Instead of just your statement, we know that this is the case. But when I said we know it's the case, I'm talking about we, the people in the courtroom who heard the evidence in this case. We know because I just talked about the compartment. I was talking to the jury just like I am now, talking about the fact that this was a specially built compartment that was designed to conceal people and use over and over again. And it's at that point that I said we know it's a business because we have a compartment in this case. That's where the context comes up. And I would point out that right after this argument, I made another argument where I used the word we know from the interview. We know from the evidence. We know from the evidence. So... Those words are borderline words for all the reasons that the Ninth Circuit has laid out. They're tantamount to I think, we know, I know. And it's a – I recognize it's a form of speech where you're trying to say, you know, take it all in is what you're really saying. But it's – the format of those words does put you in some jeopardy, you have to realize. Well, I think the case is relied on by the defense attorney refers to where the prosecutor says, I think the person's candid. I think the – when the defendant pled guilty pursuant to a plea agreement, the judge was behind this. Those are the types of cases where there's vouching. In this particular case, I don't believe I'm vouching when I say – when I'm talking about the compartment and I say we know it's a business because of all this circumstantial evidence where you could – you can see it's a reasonable inference that I argued during closing arguments. It would have been better to say it wasn't reasonable inference is instead of we know. A reasonable inference from the evidence is that it's a commercial enterprise. In my – in my opening statement, I think that would be appropriate. But in my closing statement where I'm arguing inferences from the evidence that was presented, I mean, I think – Are you arguing that it's – under our law that it's okay to say I think we know? No. Okay. I'm saying – I'm saying when you say I think, you're saying I think the person's credible. When I'm saying we know from the evidence, I'm talking about the evidence that was presented at trial. We, the people who saw the evidence. I think we have your argument in mind. Thank you. Okay. You've exceeded your time. Just a couple brief points. The government mentioned unemployment. First of all, unemployment did come in. But this court's case law is clear. You can't use unemployment to prove motive. Also, as to the compartment, the testimony – basically in this case, what you see is what you get. There was – this – these photographs introduced into evidence and testimony from the agent that he took the person out of the car. There wasn't any testimony, yes, this is a professional professionally done compartment. This would have taken so long to make. This couldn't have been made by an amateur. I mean, there was nothing to exclude it from the possibility that the material witnesses or his family made this and got someone, a friend, to drive him across. I mean, looking at it, there was testimony, right, that it took two people to open it? I believe the agents may have used two people, but I don't think – I'm not sure whether or not they said we had to. I mean, the other thing – there was – the other thing to look at, you had to get it off with a wrench. The wrench is in the glove compartment. What smuggling organization would put the thing right in there? You know, there's inferences both ways on this. Right, right. And then we're applying the Rule 29 standard. You are providing the Rule 29 standard, but if there's inferences both what equal inferences, I believe there is case law. It's not cited in my briefs, but if there's two equal inferences, you must go with the one of innocence in that case. Thank you. Thank you. Thank you. The case just argued, United States v. Hernandez Miranda, is submitted.
judges: Hall, McKeown, Wardlaw